# EXHIBIT H



# HONDAJET PURCHASE AGREEMENT

*This HondaJet Purchase Agreement (Agreement) is entered into as of October 17, 2006*
*by and between Honda Aircraft Company, Inc. (Seller) and HondaJet Limited, L.L.C. (Purchaser).*
*The Seller's Authorized Sales Representative or Authorized Dealer in connection with this transaction is*
*HondaJet Midwest, LLC.*

In consideration of the mutual agreements contained in this Agreement, the parties agree as follows:

1. **AIRCRAFT PURCHASE**: Seller hereby agrees to sell and Purchaser hereby agrees to purchase one HondaJet Aircraft ("Aircraft"), which shall be designed and manufactured in conformity with the general Aircraft Description dated November 2006 Preliminary attached as Exhibit A. It is understood that Exhibit A is preliminary in content and is subject to revision by Seller upon development of more final data for the Aircraft. Upon development of such final data, Seller will provide Purchaser with a revised Exhibit A (referred to for convenience as the "Specification"), which shall be incorporated herein by reference and which shall supersede and replace the preliminary version or a prior updated version, as applicable. It is anticipated that the "Performance" section of the Specification attached as Exhibit A will be provided to Purchaser in substantially final form on or about May 17, 2007. In addition to Purchaser's unqualified right to terminate this Agreement and receive a refund of Purchaser's deposit on or prior to May 17, 2007, in the event any version provided after May 17, 2007 includes any material reductions in such Performance section below the figures in Exhibit A, Purchaser may terminate this Agreement within 10 days following Purchaser's receipt of such final version of the Performance section. Following any such termination, Seller shall refund the deposit referred to in Section 2a within 10 business days.

2. **PRICE AND PAYMENT TERMS**: The base price of the Aircraft expressed in October 2006 U.S. Dollars, (excluding all applicable taxes and any optional equipment) is $3,650,000 ("Purchase Price"). The Purchase Price is subject to escalation and shall be adjusted by the percentage difference in the Consumer Price Index, Urban Wage Earners and Clerical Workers (CPI-W), U.S. City Average, 1982-84 = 100 as published by the U.S. Department of Labor – Bureau of Labor Statistics, for the month of October 2006 and up to Delivery Time (as defined in Paragraph 4). The Purchase Price is payable as follows:

    a. First payment of $75,000 less the deposit, if any, previously received from Purchaser due upon signing of this Agreement. Seller acknowledges that Purchaser paid and Seller received a deposit of *$25,000* prior to signing of this Agreement, which shall be applied against the amount due upon Agreement signing and as a result only *$50,000* shall be due upon Agreement signing.

    b. Second payment of $175,000 due 24 months prior to the Scheduled Delivery Time (as defined below).

    c. Third payment of $175,000 due 12 months prior to the Scheduled Delivery Time.

    d. Fourth payment of $175,000 due 6 months prior to the Scheduled Delivery Time.

    e. Balance of $3,050,000 (plus any escalation and price adjustments as provided herein) due at Delivery Time.

    Each of the payments specified in Paragraphs (a) through (d) above shall be non-refundable except as provided herein. All payments shall be made in U.S. Dollars by wire transfer to an account designated by Seller or an immediately negotiable instrument acceptable to Seller. All payment documentation shall specifically show the funds came directly from or were initiated by Purchaser, and be accompanied by any documentation reasonably requested by Seller for legal compliance purposes. In the event of a late payment, Seller may assess Purchaser interest at the 1 month LIBOR rate as advertised in the Wall Street

*HondaJet Purchase Agreement*

Journal under "Money Rates" on the first day of each month for the period during which the payment is late. Charges for optional equipment shall be as provided in Paragraph 3. Seller shall provide Purchaser with a written computation of any escalation and price adjustments prior to the Delivery Time.

3. **OPTIONS AND SELECTIONS**: Purchaser shall have until 9 months prior to the Scheduled Delivery Time ("Customization Date") to select any manufacturer offered optional equipment and make final interior and exterior selections, including color and trim, and pay Seller for any such optional equipment or selections. If Purchaser fails to make such selections by the Customization Date, Seller shall select interior and exterior finishes including color and trim, and shall not include in the Aircraft any such optional equipment, unless otherwise approved in writing by Seller.

4. **DELIVERY**:

   a. Delivery is scheduled to occur ("Scheduled Delivery Time") within 90 days of the target delivery quarter, the *Third Quarter* of *2011*, subject to adjustment as provided herein, at Seller's production facility or delivery center. Seller will provide Purchaser at least 90 days in advance an updated Scheduled Delivery Time, which shall be incorporated herein by reference and which shall supersede and replace the prior Scheduled Delivery Time. Seller will confirm or adjust the date at least 10 calendar days in advance of the day the Aircraft will be ready for delivery ("Ready Date").

   b. The Aircraft delivery schedule will be based on the Seller receiving a Type Certificate and production authority for the Aircraft (the "FAA Certification Date") by the 1st Half 2010, and the date of delivery of Seller's first commercially sold HondaJet ("First Delivery") occurring by the 2nd Quarter 2010. In the event that there is a delay in the FAA Certification Date past the 1st Half 2010 or in the First Delivery past the 2nd Quarter 2010, then Seller may, in good faith consultation with Purchaser, adjust the Aircraft delivery schedule to defer the Scheduled Delivery Time of the Aircraft by a period of time no longer than the delay in the FAA Certification Date or First Delivery. Seller may make a similar adjustment for a delay in issuance of the airworthiness certificate. Seller shall periodically advise Purchaser of any projected delay in the FAA Certification Date or First Delivery and notify Purchaser as soon as reasonably practicable of any Seller decision to adjust the Aircraft delivery schedule.

   c. In the event of any fire, flood, strikes or other industrial disturbances, accident, war, riot, insurrection, delay in vendor deliveries or causes beyond the reasonable control of Seller (each, an "Excused Delay"), Seller will have the right, by written notice to Purchaser, to extend the Scheduled Delivery Time of the Aircraft by one day for each day of or caused by an Excused Delay.

5. **INSPECTION AND ACCEPTANCE**:

   a. Prior to Purchaser's acceptance, the Aircraft shall be subject to inspection and a flight test, on or within 7 days of the Ready Date, of not more than 2 hours duration controlled by Seller and participated in by Purchaser's representatives, including owner, flight crew and/or maintenance technician. Seller shall have a reasonable time to correct any discrepancies disclosed by such flight test. Purchaser shall accept delivery of the Aircraft by signing a receipt for delivery in the form of Exhibit B attached hereto (the time of acceptance of delivery of the Aircraft being the "Delivery Time"), which shall be conclusive evidence that the Aircraft complies with the terms and conditions of this Agreement and has been accepted without any condition or reservation by Purchaser, except for discrepancies identified to Seller in writing.

   b. If any discrepancies in the Aircraft are identified, Purchaser shall notify Seller of the same in writing, not later than two calendar days after commencing the inspection. A "discrepancy" means a condition in the Aircraft, not approved or authorized by Purchaser, that (1) does not conform to the Specification, as revised through the Delivery Time, or (2) does not conform to the warranted condition of the Aircraft (including workmanship) set forth on Exhibit C, and in each case such non-conformance has a material effect on the Aircraft's appearance, operation or performance. If Seller is not able to remedy a discrepancy within 7 days after the Ready Date, Purchaser shall reasonably consider accepting the Aircraft in its then condition, subject to Seller's commitment in writing to remedy such discrepancy as

soon as reasonably practicable after the Delivery Time. Any discrepancies not disclosed in writing as provided in this Section shall be deemed waived, and any discrepancies discovered or alleged after the Delivery Time shall be subject only to the rights and remedies available to Purchaser under the Warranty, if and to the extent available.

c. Subject to remedy of discrepancies, Purchaser shall accept delivery of the Aircraft within 7 days after the Ready Date. In all events, the full balance of the Purchase Price and any other charges due under this Agreement shall be paid no later than 7 days following the Ready Date. In the event Purchaser fails to inspect, accept and take delivery of the Aircraft within 7 days of Ready Date, except where such failure is the result of a breach by Seller of its obligations hereunder or caused by discrepancies revealed during the inspection, Seller shall, in addition to any other rights it may have under this Agreement, be entitled to compensation from Purchaser for all reasonable and documented out-of-pocket costs and expenses actually incurred by Seller as a result of such failure and, at Seller's option, shall also be entitled to cancel delivery of such Aircraft and retain as liquidated damages all Pre-delivery Payments made by Purchaser.

d. In the event the Purchaser elects to designate a representative to inspect and accept delivery, Seller must be notified in advance. Such notice must be provided in writing at least 3 business days prior to the inspection and flight test, substantially in the form of Exhibit D.

6. **TITLE AND RISK OF LOSS**: Title to the Aircraft and risk of loss for the Aircraft shall transfer from Seller to Purchaser at Delivery Time following verified payment of balance due. Seller shall provide to Purchaser at Delivery Time a Bill of Sale and any other documents required by FAA rules transferring ownership of the Aircraft to the Purchaser free and clear of all encumbrances, other than liens and other security interests arising out of Purchaser's financing of the purchase of any Aircraft. If the Aircraft is to be registered in the U.S., Purchaser agrees to notify Seller six (6) months prior to the scheduled month of Aircraft delivery with the special registration number ("N" number that Purchaser has reserved) for the Aircraft and to assign to Seller such reserved special registration number. If Purchaser fails timely to so notify and assign, Purchaser agrees to accept the Aircraft with a registration number provided by Seller. At Purchaser's request and expense, Seller will consent to Purchaser's registration of an international interest in the Aircraft under the so-called Cape Town Convention.

7. **UPDATES**: Seller shall have the right, at its expense and without the prior consent of Purchaser, to make modifications, alterations or changes to the Specification or the optional equipment, or to substitute substantially equivalent equipment, accessories or materials in the Aircraft, where such changes or substitutions are deemed necessary by Seller or the FAA to correct defects, prevent delays in manufacturing, or to improve the performance, manufacture, reliability, stability, control, utility, maintenance or appearance of the Aircraft. Further, Seller reserves the right to revise the Specification and the optional equipment whenever occasioned by the rules, regulations or other requirements of the FAA or any other United States or foreign government agency, including for any change required to be made in the Specification to obtain the Type Certificate, production authority or any Certificate of Airworthiness (including any additional equipment required to be installed in or on the Aircraft) and/or to comply with any operational, airworthiness or certification requirements (including any regulatory change or Airworthiness Directives issued by the FAA applicable to the Aircraft, whether or not the compliance date for such regulatory change or Airworthiness Directive falls after the scheduled Aircraft delivery) applicable to aircraft in general or to the Aircraft specifically. Seller shall inform Purchaser in writing of any such changes to the Specification or the optional equipment. Any such changes shall constitute an amendment to this Agreement and will result in an appropriate adjustment in the Aircraft delivery schedule, and if attributable to a legal or regulatory requirement or necessary to comply with operational, airworthiness or certification requirements solely with respect to Purchaser's specific operations, will result in an appropriate adjustment in the Purchase Price.

8. **AIRCRAFT DELIVERY DELAY**: Seller shall not be liable to Purchaser for any delay prior to Delivery Time for any cause whatsoever, and a delay shall not constitute a material breach or event of default under this Agreement; provided, however, (i) if the Aircraft is lost, destroyed or damaged beyond economic repair; or (ii) if Seller should fail to make delivery within 90 days after the Scheduled Delivery Time (as updated) and such failure is not due, in whole or in part, to an Excused Delay; or (iii) if for any reason

Seller should fail to make delivery within 180 days after the Scheduled Delivery Time, Purchaser may terminate this Agreement (unless Purchaser agrees to a later Scheduled Delivery Time), in which event Purchaser shall have the remedies set forth in Paragraph 9. In the event Purchaser fails to exercise its right of termination within 30 days of Scheduled Delivery Time, Purchaser shall be deemed to have waived its right of termination with respect to such delay (unless delivery of such Aircraft is not made by the revised Scheduled Delivery Time).

9. **DEFAULT AND TERMINATION:** Purchaser's remedies for any default or breach of any material term or condition of this Agreement by Seller, including any delay in delivery of the Aircraft or any matter relating to the manufacture thereof, shall be limited to the rights to terminate for delay set forth in Paragraph 8 and Seller's warranty set forth in Paragraph 11 and Exhibit C. If Purchaser is in default or breach of any material term or condition of this Agreement, including Purchaser's failure to make all payments when due or Purchaser's failure to accept delivery of the Aircraft in accordance with Paragraphs 4 and 5, Seller may suspend performance of its obligations under the Agreement (with a day for day extension in the delivery schedule) until such default or breach has been cured, collect interest on any overdue amounts as provided in Paragraph 2 or terminate this Agreement. Seller also may terminate this Agreement before Delivery Time if the transaction is prohibited by law or if Seller determines that it may not sell the Aircraft to Purchaser without substantial risk of violating the law.

Upon termination of this Agreement by Purchaser under Paragraph 8, Purchaser shall have the right to return of all payments made by Purchaser under Paragraph 2. Upon return of such payments, Purchaser shall have no further rights against Seller pursuant to this Agreement or due to any breach thereof. Purchaser agrees that its sole remedy for any failure of Seller to perform any part of this Agreement up to and including Delivery Time is limited to the return of such payments and, in no event shall Purchaser be entitled to special, consequential, or other damages.

Upon termination of this Agreement by Seller under Paragraph 9 due to Purchaser's default or breach of any material term or condition of this Agreement, all payments made under Paragraph 2 shall be retained by Seller, not as a forfeiture but as liquidated damages. Purchaser expressly acknowledges that it would be difficult to determine the actual damages Seller will suffer because of a Purchaser default, because Seller's business model depends on high-volume production to control its costs and overhead, including volume-based pricing terms in contracts with vendors and suppliers, and because Seller would need to incur remarketing and reconfiguration costs for the Aircraft. Purchaser acknowledges and agrees that the liquidated damages are an accurate, fair and reasonable estimate of the damages Seller is likely to incur as a result of any default leading to termination of this Agreement.

Following any termination of this Agreement, neither party shall have any further obligations to the other under this Agreement with respect to the Aircraft. Seller may resell the Aircraft to another customer without notice to Purchaser at any price, terms and conditions established by Seller and its new customer, and Purchaser shall not have any right to any portion of the proceeds of such subsequent sale.

10. **TAXES AND DUTIES:** Purchaser shall be responsible for (i) any national, state or local taxes (including sales, excise, use, property and VAT taxes but excluding taxes on Seller's income) applicable to this sale of the Aircraft or related to the Aircraft itself, whether imposed on either Purchaser or Seller and whether imposed at Delivery Time or thereafter; (ii) any transportation charges for the Aircraft from Seller's factory to another mutually agreed delivery location; and (iii) any import duties, import taxes or other import charges imposed by foreign governments. Where Seller is required to pay such taxes on behalf of Purchaser or collect such taxes from Purchaser, Purchaser shall reimburse or pay such taxes directly to Seller promptly upon receipt of a written notice from Seller requiring such payment. The Purchase Price does not include any applicable taxes.

11. **WARRANTY PROVISIONS:** The Aircraft shall be furnished with the limited warranty provided in Exhibit C, subject to the limitations on Seller's liability set forth below. It is understood that Exhibit C is preliminary in content and is subject to revision by Seller. Seller will provide Purchaser with the final limited warranty at the time of delivery of the final Specification under Section 1 of the Agreement, which warranty will be within what is reasonable and customary in the industry for an aircraft warranty. The final

warranty in the form of a revised Exhibit C, shall be incorporated herein by reference and shall supersede and replace the preliminary version or the prior updated version, as applicable. Any customer support services package (if agreed to by the Parties) will be agreed to separately.

EXCEPT FOR THE EXPRESS TERMS OF SELLER'S WRITTEN LIMITED AIRCRAFT WARRANTY WHICH ARE SET FORTH IN EXHIBIT C, SELLER MAKES NO, AND HEREIN SPECIFICALLY EXCLUDES ANY, REPRESENTATIONS OR WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE. THE WRITTEN LIMITED AIRCRAFT WARRANTY OF SELLER IS IN LIEU OF ANY OTHER WARRANTY, OBLIGATION OR LIABILITY WHATSOEVER, INCLUDING BY REASON OF THE MANUFACTURE, SALE, LEASE OR USE OF THE AIRCRAFT, AND NO PERSON OR ENTITY IS AUTHORIZED TO MAKE ANY OTHER REPRESENTATIONS OR WARRANTIES OR TO ASSUME ANY OBLIGATIONS ON BEHALF OF SELLER REGARDING THE AIRCRAFT WARRANTY. REPAIR OR REPLACEMENT ARE THE ONLY REMEDIES AVAILABLE UNDER SELLER'S WRITTEN LIMITED AIRCRAFT WARRANTY, AND PURCHASER HEREBY WAIVES ALL OTHER RIGHTS OR REMEDIES AGAINST SELLER, WHETHER EXPRESS OR IMPLIED, ARISING BY LAW, IN CONTRACT, IN TORT OR OTHERWISE, WITH RESPECT TO ANY DEFECT, NON-CONFORMANCE OR DEFICIENCY IN PRODUCTS DELIVERED UNDER THIS AGREEMENT OR IN ANY OF THE MANUALS, TECHNICAL PUBLICATIONS, INFORMATION, INSTRUCTIONS OR OTHER GOODS OR SERVICES PROVIDED UNDER THIS AGREEMENT, OR RELATED TO ANY MODIFICATIONS, REPAIRS, OR REPLACEMENT PARTS THAT MAY HEREAFTER BE FURNISHED BY SELLER TO PURCHASER.

IN NO EVENT SHALL SELLER BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES, WHETHER ARISING OUT OF CONTRACT, WARRANTY OR TORT (INCLUDING, WITHOUT LIMITATION, NEGLIGENCE, ACTIVE OR PASSIVE; IMPUTED LIABILITY; OR STRICT LIABILITY) OR BY STATUTE OR OTHERWISE, INCLUDING BUT NOT LIMITED TO LOSS OF PROFITS OR GOODWILL, LOSS OF USE, LOSS OF TIME, INCONVENIENCE, LOSS OF VALUE OR COMMERCIAL LOSS. THE ENGINES AND ENGINE ACCESSORIES AND AVIONICS ARE SEPARATELY WARRANTED BY THEIR MANUFACTURERS, AND NO ADDITIONAL WARRANTY IS PROVIDED BY SELLER, ALTHOUGH SELLER SHALL BE RESPONSIBLE FOR CAUSING THE ENGINE OR AVIONICS MANUFACTURER OR VENDOR TO EFFECT THE WARRANTED REPAIR, AS PROVIDED IN SECTION 6 OF EXHIBIT C. UNDER NO CIRCUMSTANCES SHALL SELLER'S AGGREGATE LIABILITY UNDER THIS AGREEMENT EXCEED THE CUMULATIVE AMOUNTS PAID TO SELLER BY PURCHASER HEREUNDER, LESS ANY LIQUIDATED DAMAGES TO WHICH SELLER IS OR BECOMES ENTITLED. AS USED IN THIS PARAGRAPH 11, THE TERM "SELLER" INCLUDES SELLER, ITS SUBSIDIARIES, AFFILIATES OR RELATED COMPANIES, ASSIGNEES AND SUCCESSORS AS WELL AS ALL OF SELLER'S OFFICERS, DIRECTORS, EMPLOYEES, AFFILIATES, REPRESENTATIVES AND AGENTS. THE LAWS OF SOME STATES DO NOT PERMIT CERTAIN LIMITATIONS ON WARRANTIES OR REMEDIES. IN THE EVENT SUCH A LAW APPLIES, THE FOREGOING EXCLUSIONS AND LIMITATIONS ARE AMENDED INSOFAR AND ONLY INSOFAR AS REQUIRED BY SAID LAW.

12. GOVERNING LAW: This Agreement shall be governed by and construed in accordance with the substantive laws of the State of North Carolina without regard to its conflicts of laws principles. The parties agree that this Agreement shall be enforceable in the courts of the State of North Carolina, and for such purpose hereby consent and irrevocably submit to the non-exclusive jurisdiction of such courts and agree that all claims in respect of this Agreement may be heard and determined in any of such courts. Prior to filing any suit regarding any matter arising under this Agreement other than payments due, the parties shall engage in not less than 30 days of good faith negotiations to resolve such matter and, at the request of either party, non-binding arbitration.

### 13. MISCELLANEOUS:

a. Any formal notices given pursuant to this Agreement shall be in writing and shall be sent by registered or certified mail, courier service or facsimile addressed in case of notice to Seller, to Vice President, Administration, HondaJet Marketing, 6423-B Bryan Boulevard, Greensboro, North Carolina 27409, Facsimile No. 336-662-0852, and in case of notice to the Purchaser to the name and address provided herein, or such other address as the party to receive the notice designates in writing. Notices are effective upon receipt.

b. This Agreement is the entire agreement controlling this Aircraft purchase and supersedes any other express, implied, oral or written representations, omissions or agreements, including any Deposit Agreement which may have been entered into.

c. This Agreement, including the rights of Purchaser hereunder, may not be assigned by Purchaser directly or indirectly except to a wholly-owned subsidiary, successor in interest by name change or otherwise or to a financial institution solely for the purpose of providing Purchaser financing or leasing, provided that Purchase shall remain jointly and severally liable with the assignee hereunder, and then only upon the prior written consent of Seller.

d. Purchaser is not licensed or permitted to resell or otherwise act as a "dealer", "distributor" or "broker" of the Aircraft, and the Aircraft shall be used by Purchaser solely for Purchaser's own use or in connection with Purchaser's business and operations. Purchaser represents to Seller that the Aircraft is being purchased with no intent to resell or otherwise transfer the Aircraft to any third party for a period of one year after the Delivery Time. A *bona fide* sale and leaseback or pledge in connection with a financing arrangement shall not be deemed a resale of the Aircraft.

e. This Agreement, all its terms, and all information and data disclosed by either party in connection with the negotiation, signing and performance of this Agreement are confidential and may not be disclosed by the receiving party to any third party, except (i) to officers, directors, employees, agents or other representatives, or (in case Purchaser is an individual) family members, so long as such persons agree to maintain the confidentiality thereof, (ii) as required by law, rule or regulation or by court order, (iii) information already disclosed to the public, other than through breach of this Agreement, or (iv) with prior written consent of the disclosing party.

f. If any portion of this Agreement is invalid or unenforceable, this Agreement shall be considered divisible as to such provisions and the remainder of the Agreement valid and binding as though such provisions were not included herein.

g. This Agreement shall become a binding contract upon its final acceptance and signing by Seller. The signatories to this Agreement confirm that they have read the complete Agreement, understand its contents and have full authority to bind and hereby do bind their respective parties.

IN WITNESS WHEREOF, each party hereto has executed this Agreement as of the date first above written.

PURCHASER:

HondaJet Limited, L.L.C.

By: _____

F.B. Freeman Jr.
Managing Member
The Main Terminal Building, Forbes Field
Topeka, KS 66619

HONDA AIRCRAFT COMPANY, INC.

By: _____

Douglas Danuser
General Manager,
Sales & Marketing

HONDAJET MIDWEST, LLC
Authorized Sales Representative or Dealer

By: _____

John M. Lowe
President



# Exhibits to the Honda Purchase Agreement:

*Exhibit A*   AIRCRAFT DESCRIPTION

*Exhibit B*   RECEIPT OF AIRCRAFT

*Exhibit C*   WARRANTY

*Exhibit D*   DESIGNATION OF REPRESENTATIVE



## AIRCRAFT DESCRIPTION

*November 2006 Preliminary*

**Performance**

| | |
|---|---|
| Max Cruise Speed * (kts) | 420 |
| Range, 4 occupants** (nm) | 1,180 |
| Useful Load (lbs) | 3,378 |
| Engines: | Two GE-Honda HF120 or better. |
| Pressurization (PSI) | 8.7 |

\* ISA conditions
\*\* At high-speed cruise, IFR 100 nm alternate, 1 pilot, 3 passengers, ISA conditions, with 45 minute reserve.

**FAA Type Certification Date:**
Estimated 1st Half 2010.

**FAA Type Certification Date for Engines:**
Estimated (by Engine Manufacturer TBD)

**Standard Equipment:**
Flight Management System
Auto Pilot
Weather Radar
Certified For Flight Into Known Icing
Standard interior configuration, with seating for seven (7), including pilot(s)
Standard paint scheme

**Standard Documentation**
Airplane Flight Manual
Pilots Operating Hand Book

Exhibit A — Exhibit A to HondaJet Purchase Agreement





RECEIPT OF AIRCRAFT

_____ ("Purchaser") hereby acknowledges receipt and acceptance from Honda Aircraft Company, Inc. at _____, on the _____ day of _____, one HondaJet aircraft (the "Aircraft") bearing serial number _____, including with the Aircraft the _____ engines bearing manufacturer's serial numbers _____ and _____, all in accordance with the HondaJet Purchase Agreement between Honda Aircraft Company, Inc. and Purchaser dated _____ (the "Agreement").

Purchaser acknowledges that, except as set forth in the discrepancy list attached hereto, the Aircraft has been satisfactorily inspected in accordance with the terms of the Agreement and that the Aircraft is in complete conformity with the Specification (as defined in and revised in accordance with the Agreement) and the Agreement, without any condition or reservation by Purchaser.

Purchaser: _____

By: _____

Name and Title: _____

Location of Acceptance _____

Date: _____

HONDA AIRCRAFT COMPANY, INC. hereby agrees, at its own cost, to correct the discrepancies listed in the attachment hereto.

Honda Aircraft Company, Inc: _____

By: _____

Name and Title: _____

# Exhibit B

*Exhibit B to HondaJet Purchase Agreement*



WARRANTY

1. **General.** Subject to the limitations and conditions set forth in this Exhibit C, Seller warrants to Purchaser that, at the time of delivery, the Aircraft shall be free from defects in material and defects in manufacture. Seller's sole obligation and liability for a breach of this warranty is limited to repairing, replacing or correcting, at Seller's sole discretion, the defective part or condition, provided that the work is performed by Seller at Seller's facilities, or at such other facility as may be designated by Seller. The Aircraft or any item(s) found defective shall be returned to Seller's facilities or such other facility as may be designated by Seller. Reasonable freight charges for defective items shall be at Seller's expense.

2. **Duration.** Seller's liability under this warranty is limited to defects that are discovered within the applicable periods set forth below:

    i) OEM Components – the earlier to occur of 36 months from the time of delivery or 1,500 flight hours.

    ii) Vendor Items   36 months from the time of delivery.

    iii) Engines – manufacturer's warranty (but only to the extent described in section 6 of this warranty).

    iv) Avionics -- manufacturer's warranty (but only to the extent described in section 6 of this warranty).

    v) Paint and Interior – 12 months from the time of delivery.

3. **Exclusions.** Seller's obligations under this warranty exclude the following:

    - Repair or replacement due to normal wear and tear or exposure, repair or replacement of consumable parts and materials (batteries, brakes, filters, gaskets, o-rings, tires, etc.), routine maintenance (including scheduled replacements of life limited components), routine inspections, etc.

    - Any matters covered by a customer support package, if any, offered by Seller from time to time, including training, spare parts support or revision of technical publications or manuals.

    - All landing fees, applicable taxes, tariffs, duties, cargo, crew expenses and insurance.

4. **Additional Exclusions.** Seller's warranty shall not apply to any defect in the Aircraft or any component or part thereof if:

    i) the Aircraft or parts or components or parts thereof have not been operated or maintained in accordance with Seller's approved flight, operating or maintenance manuals, instructions or bulletins issued in respect of the Aircraft;



Exhibit C to HondaJet
Purchase Agreement



ii) if the defect arises (in Seller's judgment) in whole or in part from an installation, repair, alteration or modification to the Aircraft with parts or components manufactured other than by Seller or with parts or components obtained by Purchaser other than from Seller, or (in Seller's judgment) the interaction with Seller-installed parts or components with parts or components obtained by Purchaser other than from Seller;

iii) the Aircraft or parts or components thereof have been subjected to misuse, abuse, accident, neglect or have been improperly stored or protected against the elements when not in use.

5. **Purchaser's Obligations.** Seller's obligations under this warranty are subject to Purchaser complying with all of its obligations under this warranty, including without limitation the following:

   i) Purchaser must notify Seller in writing of any defect prior to such defect being corrected and no later than within 90 days of discovery of such defect and before the expiration of the applicable warranty period set forth in section 2 of this warranty.

   ii) Purchaser must maintain complete records of operations and maintenance of the Aircraft, the Aircraft engines and Aircraft avionics, and make those records available to Seller for Seller's inspection.

   iii) Purchaser must pay any expenses or costs related to items submitted for coverage under this warranty that later are determined to have no defect.

6. **Engine Warranty; Avionics Warranty.** Purchaser's warranty for any engine or engine accessory installed on the Aircraft and any avionics or avionics systems installed on the Aircraft shall be the manufacturer's warranty from the engine and avionics manufacturers, respectively. Purchaser agrees that Seller has no additional warranty obligation or liability beyond the manufacturer's warranty with respect to any engine or engine accessory or avionics installed on the Aircraft, including without limitation for any lack of performance, reliability or maintainability of the Aircraft as a result of the engines or avionics. However, Seller shall, if the Aircraft or defective engine-related or avionics item(s) found defective are returned (with reasonable freight charges for defective items to be at Seller's expense) to Seller's facilities or such other facility as may be designated by Seller, be responsible for causing the engine or avionics manufacturer or vendor to effect the repair, replacement or correction of the defective engine-related or avionics part or condition to the extent covered under such manufacturer's warranty.

7. **No New Warranty Period.** Any repair, replacement or correction performed by Seller under this warranty shall be covered under this warranty only to the extent of the unexpired portion of the warranty periods provided in section 2 of this warranty.

8. **Assignment.** This warranties set forth in this Exhibit C are for the benefit of Purchaser, its successors and all persons to whom title to the Aircraft may be transferred in accordance with the Agreement during the warranty periods set forth in section 2 of this warranty, provided that the successor or subsequent owner agrees in writing to all terms and conditions contained in this Exhibit C and performs all obligations of Purchaser hereunder.



9. **Disclaimer and Release.** THE WARRANTIES SET FORTH IN THIS EXHIBIT C ARE SUBJECT TO ALL OF THE LIMITATIONS AND EXCLUSIONS SET FORTH IN SECTION 11 OF THE AGREEMENT. If an alleged defect that would be covered by this Exhibit C warranty causes the loss, destruction or damage destruction of the Aircraft beyond economic repair, Purchaser hereby waives and releases for itself, its successors and assigns, and its insurers all rights, claims, and remedies with respect to any claims for the recovery of the value of the Aircraft or for loss of use of the Aircraft with respect to any and all warranties expressed (including those provided in this Exhibit C), implied or statutory (including without limitation, the implied warranties of merchantability and fitness), duties, obligations, and liabilities in tort or contract arising by law or otherwise including (1) liability for Seller's own negligence or (2) strict liability or product liability. This waiver shall not be interpreted to affect in any way Seller's obligations, if any, for third party claims for property damage, personal injury, or wrongful death.

10. **Modifications.** No agreement or understanding varying or extending the terms of the warranties set forth in this Exhibit C will be binding upon Seller unless in writing and signed by a duly-authorized representative of Seller.

11. **Application to Seller.** As used in this Exhibit C, the term "Seller" includes Honda Aircraft Company, Inc., its subsidiaries, affiliates and related companies, assignees and successors, and each of their officers, directors, employees, representatives and agents.

12. **State Law Matters.** The laws of some states do not permit certain limitations on warranties or disclaimers. If such a law applies to the warranty limitations or disclaimers in this Exhibit C, the foregoing limitations and disclaimers shall be deemed amended and reformed to the extent, and only to the extent, required to conform to such law, and only in such jurisdiction in which such law applies.



## DESIGNATION OF REPRESENTATIVE

_____ ("Purchaser"), a resident of _____, _____, hereby constitutes and appoints _____ as Purchaser's lawful representative ("Representative"), and on Purchaser's behalf and in Purchaser's name to take all such actions as Representative may deem necessary or advisable in Representative's absolute discretion as fully as Purchaser could do if personally present in connection with inspection and acceptance of an Aircraft, as defined in and provided for under the HondaJet Purchase Agreement (Aircraft Purchase Agreement) entered into as of _____, 20__ by and between Honda Aircraft Company, Inc. (Seller) and Purchaser, including, without limitation:

a. To conduct or participate in an inspection and a flight test of the Aircraft as provided in Section 5 of the Aircraft Purchase Agreement, including selection of persons (such as flight crew and/or maintenance technician) to conduct or participate in such inspection and flight test;

b. To provide notice to Seller of any "discrepancies" disclosed by such flight test, as defined in and provided for under Section 5 of the Aircraft Purchase Agreement;

c. To accept delivery of the Aircraft by signing a receipt for delivery in the form of Exhibit B attached to the Aircraft Purchase Agreement; and

d. To sign, execute, acknowledge and deliver all other documents and take all other actions associated or in connection with delivery and acceptance of an aircraft of any other kind or nature.

Purchaser acknowledges and agrees that (i) Representative's participation in such inspection and flight test shall satisfy Seller's obligations under Section 5 of the Aircraft Purchase Agreement to conduct or permit such inspection and flight test prior to delivery of the Aircraft; (ii) Representative's signing such receipt for delivery of the Aircraft shall be conclusive evidence that the Aircraft complies with the terms and conditions of the Aircraft Purchase Agreement and has been accepted without any condition or reservation by Purchaser, except for discrepancies identified to Seller in writing by Representative as provided in Section 5 of the Aircraft Purchase Agreement; and (iii) Representative's signing, execution and delivery of documents associated or in connection with delivery and acceptance of the Aircraft shall have the same force and effect as if signed by Purchaser personally.

Purchaser hereby gives and grants to Representative full power of delegation and substitution, and hereby ratifies and confirms all actions that Representative or Representative's substitute may lawfully do or cause to be done by virtue of this Designation. Until receipt by Seller of written notice of revocation of this Designation, or revocation by applicable law, any action taken by Seller or its representatives in reliance upon this Designation shall be fully binding upon Purchaser and Purchaser's heirs, executors, legal representatives and assigns. This Designation shall not be affected by and shall survive death, disability or incompetence or Purchaser. Purchaser agrees, for Purchaser and Purchaser's heirs, executors, legal representatives and assigns, to indemnify and hold harmless Seller and its representatives from and against any and all claims that may arise against any one or more of them by reason of having relied on this Designation.

# Exhibit D

*Exhibit D to HondaJet Purchase Agreement*





The following is a sample of Representative's signature:

_____
[NAME OF REPRESENTATIVE]


In witness whereof, the undersigned hereunto sets hand and seal this ___ day of _____, 20___.


_____
[NAME OF PURCHASER]

[location]:  ss.


On this ___ day of _____, 20___, before me, _____, the undersigned officer, personally appeared [NAME OF PURCHASER], known to me (or satisfactorily proven) to be the person whose name he/she subscribed to the within instrument and acknowledged that he/she executed the same for the purposes therein contained. In witness whereof I hereunto set my hand and official seal.


_____
NOTARY PUBLIC